IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HEATHER HARKNESS,

               Plaintiffs,

vs.                                              Civ. No.  10-813 JH/WPL

NEW MEXICO DEPARTMENT OF
HEALTH, JERRY LOPEZ, JAN HINKLE,
MARCIE WILSON, SUSAN FORD, and
DORIE ISLER,

               Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on three motions filed by the Defendants: (1) *Defendants' Motion to Dismiss Counts 3, 4 and 6 of Plaintiff's Complaint (Plaintiff's Human Rights Act Claims) Pursuant to Rule 12(b)(6)* [Doc. No. 22]; (2) *Defendant's Motion to Dismiss Plaintiffs' Common Law Claims (Counts 5 and 7-12 of Plaintiff's Complaint) Pursuant to Rule 12(b)(6)* [Doc. No. 24]; and (3) *Defendants' Motion to Dismiss the Individually Named Defendants and Plaintiff's Claims for Punitive Damages and Pre-Judgment Interest Pursuant to Rule 12(b)(6)* [Doc. No. 26].  The Court has considered the complaint, the briefs filed by counsel, and the applicable authorities.  Thus fully informed, the Court will grant all three motions in part and deny them in part as further described herein.

## LEGAL STANDARD

I.       **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)**

The Supreme Court of New Mexico has noted that failure to exhaust administrative remedies

under the New Mexico Human Rights Act deprives the court of subject-matter jurisdiction over claims brought under that statute. *See Mitchell–Carr v. McLendon*, 127 N.M. 282, 286, 980 P.2d 65, 71 (1999); *Angel Fire Corp. v. C.S. Cattle Co.*, 96 N.M. 651, 652, 634 P.2d 202, 203 (1981) ("Jurisdiction of the matters in dispute does not lie in the courts until the statutorily required administrative procedures are fully complied with.").

A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104, 118 S. Ct. 1003 (1998) ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1). The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. *See Holt*, 46 F.3d at 1003 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987)). Accordingly, the Court has considered Plaintiff's EEOC charge (Ex. A to Doc. No. 27) in determining whether it has subject matter jurisdiction over her Title VII and New Mexico Human Rights Act claims.

2

## II.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

To overcome a motion to dismiss under Rule 12(b)(6), "the complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotations and citations omitted). But because dismissal under Rule 12(b)(6) "is a harsh remedy, . . . a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citations and quotations omitted).

## <u>FACTS</u>

The facts of this case as alleged in the Complaint are as follows.  On July 28, 2008, Plaintiff Heather Harkness ("Harkness") began employment with Defendant New Mexico Department of Health ("NMDOH") as a certified nurse assistant technician on the second floor of the New Mexico Retirement Center in Roswell, New Mexico.  Defendant Jerry Lopez ("Lopez") was Harkness' supervisor whose responsibility it was to train Harkness.  However, Lopez immediately began to sexually harass her by telling her that he had sex in the office, calling himself a "sex machine,"

telling her that he had many affairs, and by saying that administrators asked him not to wear tight pants because he had such a "huge package" that the women were too distracted to perform their job duties.  Lopez made frequent attempts to touch Harkness, put his arm around her, pat her leg, and hug her.  On one occasion, Lopez asked Harkness if she liked anal sex.  He then grabbed her leg and said, "you have just not had anybody do it right."  Harkness rejected Lopez' advances and let him know they were unwelcome.   After about two weeks of this conduct, Harkness reported Lopez' actions to a supervisor, who in turn reported the matter to Defendant Dorie Isler ("Isler"), the head of the human resources department at the retirement center, as well to Defendant Susan Ford ("Ford"), the director of nursing.  Harkness then met with Isler and Ford, at which point she described Lopez's behavior to them.  Harkness also told Defendant Jan Hinkle ("Hinkle"), the nurse supervisor on the second floor, about the harassment.  Hinkle told Harkness, "listen little girl, nobody gets flirted with unless they want it."  Hinkle told others that Harkness deserved the harassment she received from Lopez because of her clothing.  She also treated Harkness unfairly by throwing a chart at her, making fun of her daughter, incorrectly charting her schedule, and writing up Harkness for an infraction that was unjustified.

On January 7, 2009 there was an internal job posting for a certified nurse assistant technician on the third floor of the facility.  Harkness submitted a letter to Isler requesting transfer to that floor, but Isler and Hinkle denied the transfer request.  On January 25, 2009, the evening supervisor on the third floor sent a letter to Ford requesting that Harkness be permitted to transfer to that floor, but Ford denied the request.  On January 28, 2009, the NMDOH terminated Harkness' employment at the New Mexico Retirement Center.  Other employees have suffered similar harassment as Harkness, and the perpetrators have not been disciplined.

On February 16, 2009, Harkness filed a charge against NMDOH with the Equal Employment

Opportunity Commission ("EEOC") in which she alleged that she had been discriminated against on the basis of her sex and subjected to retaliation.  On November 26, 2009, the EEOC issued a determination that there was sufficient evidence to support Harkness' claim of retaliation, and on June 8, 2010, the Department of Justice issued a letter informing Harkness of her right to sue within 90 days of her receipt of that letter.  On August 31, 2010, Harkness filed her complaint in this case. She asserts twelve claims:  sexual harassment and retaliation in violation of Title VII (Counts I and II); sex discrimination, sexual harassment, retaliation, and aiding and abetting in violation of the New Mexico Human Rights Act (Counts III, IV, and VI); violation of public policy (Count V), intentional infliction of emotional distress (Count VII), disparate treatment (Count VIII), breach of implied covenant of good faith and fair dealing (Count IX), negligent supervision (Count X), common law retaliation (Count XI), and attorney's fees (Count XII).  Harkness sues all the individual defendants in both their official and personal capacities for each of her claims.

**DISCUSSION**

**I.      MOTION TO DISMISS COUNTS III, IV, AND VI FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (Doc. No. 22)**

Defendants have moved to dismiss Harkness' claims under the New Mexico Human Rights Act ("NMHRA") on the grounds that she has failed to exhaust her administrative remedies. Although Defendants have styled their motion as one brought under Rule 12(b)(6), a failure to exhaust administrative remedies poses a jurisdictional problem.  Accordingly, the motion is in fact one brought under Rule 12(b)(1).  The Court will grant the motion to dismiss as to the individual defendants in both their individual and official capacities, but will deny it for the time being as to Defendant NMDOH.

The NMHRA was enacted to eliminate unlawful discriminatory and retaliatory practices

5

"and to create a comprehensive administrative process to facilitate the adjudication of claims of

discrimination." *Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. 441, 442, 872 P.2d 859, 860 (1994). The

NMHRA makes it an unlawful discriminatory practice for

> an employer, unless based on a bona fide occupational qualification or other
> statutory prohibition, to refuse to hire, to discharge, to promote or demote or to
> discriminate in matters of compensation, terms, conditions or privileges of
> employment against any person otherwise qualified because of race, age, religion,
> color, national origin, ancestry, sex, physical or mental handicap or serious medical
> condition, or, if the employer has fifty or more employees, spousal affiliation;
> provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to
> discrimination based on age; or, if the employer has fifteen or more employees, to
> discriminate against an employee based upon the employee's sexual orientation or
> gender identity....

NMSA 1978, § 28–1–7(A).   The NMHRA also allows individuals to bring a lawsuit in the

appropriate district court after exhausting their administrative remedies.  *See Luboyeski v. Hill*, 117

N.M. 380, 382, 872 P.2d 353, 355 (1994). The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo in the
> district court of the county where the discriminatory practice occurred or where the
> respondent does business by filing a notice of appeal within ninety days from the
> date of service of the commission's order.

NMSA 1978, § 28–1–13(A).

　　　　To bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative

grievance process with respect to all defendants named in the district-court lawsuit.  *See Luboyeski*

*v. Hill*, 117 N.M. at 383, 872 P.2d at 356 ("Since [the plaintiff] has not gone through the

administrative process that is prerequisite to suing the individual defendants under the Human

Rights Act, we affirm the trial court's order dismissing those defendants."). The administrative

procedure established in the NMHRA requires that, within 300 days of the alleged discrimination,

the complainant file a written charge with the Human Rights Division which "shall state the name

and address of the person alleged to have engaged in the discriminatory practice, all information

6

relating to the discriminatory practice and any other information that may be required" by the agency. NMSA 1978, § 28-1-10(A). Then, the director of the Human Rights Division must conduct an investigation and either dismiss the complaint for lack of probable cause, *id*. § 28-1-10(B), or attempt to resolve it through persuasion and conciliation. *Id*. § 28-1-10(C). Section 28-1-10(D) of the NMHRA contemplates that, without delay after the Division's receipt of a complaint, the person who filed the complaint may request, and shall receive, an order of nondetermination. Alternatively, within one year of the filing of the administrative charge, the Human Rights Division may dismiss it for lack of probable cause. § 28-1-10(G)(1). Either of these outcomes may be appealed to the district court under § 28-1-13. However, "the district court must dismiss an NMHRA claim if the prerequisites of obtaining an order from the Division and appealing that order within [ninety] days are not satisfied." *Mitchell-Carr v. McLendon*, 127 N.M. 282, 287, ¶ 17 (citing § 28-1-13(A)). EEOC notices will not fulfill this requirement because they are not orders from the Human Rights Division. *Id*. at ¶ 18.

Here, the Defendants raise two arguments in favor of dismissal. First, they argue that Harkness' act of filing an administrative complaint with the EEOC, absent a determination from the Human Rights Division, is not sufficient to exhaust her administrative remedies under the NMHRA. The Court agrees. In *Sabella v. Manor Care, Inc.,* 1996-NMSC-014, 121 N.M. 596, 915 P.2d 901, the New Mexico Supreme Court recognized that certain state administrative procedures may be satisfied by filing an EEOC complaint. The Supreme Court later clarified, however, that *Sabella* is limited to the *initial processing* of claims under the terms of the work-sharing agreement between the EEOC and the Human Rights Division. *Mitchell-Carr*, 127 N.M. at 286-88, ¶ 12-19. "Thus, receiving a notice of right to sue from the EEOC does not satisfy the state law requirement of obtaining an order [of non-determination] from the Division." *Id*. It is undisputed that Harkness

7

filed an EEOC complaint, and that she received an EEOC determination as well as a "right to sue" letter. However, she has received no order from the Human Rights Division. In accordance with *Mitchell-Carr* and *Sabella*, Harkness' NMHRA claims against all Defendants are subject to dismissal for failure to exhaust her administrative remedies.

However, Harkness contends that the Court should not dismiss her claims because an order from the Human Rights Division may be forthcoming, thereby rendering her NMHRA claims "premature" rather than subject to dismissal. She asks the Court for more time to obtain an order from the Human Rights Division from which she may appeal. It appears that the NMHRA allows for such an event. In § 28-1-10(D), the statute provides that in jointly filed cases, such as this one, a complainant may request an order of nondetermination from the Human Rights Division "after the federal complaint has been closed." The statute does not appear to impose a time limit for a complainant to make such a request. Thus, the Court will allow Harkness the opportunity to make such a request from the Human Rights Division for an order of nondetermination on her charge against NMDOH, provided that she does so within 10 days of entry of this Memorandum Opinion and Order. Further, Harkness must notify the Defendants and this Court within 5 days of her receipt of any such order of nondetermination. Finally, Harkness must obtain the order of nondetermination within 45 days of entry of this Memorandum Opinion and Order. If she fails in any of these requirements, her NMHRA claim against Defendant NMDOH will be dismissed for lack of jurisdiction.

Second, the individual Defendants argue that Harkness' claims against them should be dismissed because she did not name them in her EEOC complaint, and therefore she has not exhausted her administrative remedies with respect to them. Further, the individual defendants argue that it is now too late for Harkness to file a new administrative complaint naming them as

8

defendants.  The Court agrees.  In *Luboyeski v. Hill*, the Supreme Court of New Mexico affirmed a trial court's dismissal of respondents who were not named in the administrative proceeding, but who were added to the appeal to the district court.  117 N.M. at 383, 872 P.2d at 356.  *See also Sonntag v. Shaw*, 130 N.M. 238, 243, 22 P.3d 1188, 1193, 2001-NMSC-015 (2001) (where a complainant names only a corporation as a respondent in administrative proceedings, and fails to name an individual personally as a respondent, the complainant fails to exhaust administrative remedies as to that individual). The authorities discussed above clearly and expressly require that individual defendants cannot be sued under the NMHRA unless the plaintiff has exhausted her administrative remedies against those individuals by naming them in her administrative charge.  Harkness does not dispute that she has failed to do so, nor does she dispute that her time to file a new administrative charge against the individual defendants has passed.  Accordingly, the Court will dismiss the NMHRA claims against the individual defendants.

## II.   MOTION TO DISMISS COMMON LAW CLAIMS (DOC. NO. 24)

In this motion, Defendant NMDOH moves (the individual defendants are not movants here) to dismiss Harkness' claims for violation of public policy (Count V), intentional infliction of emotional distress (Count VII), disparate treatment (Count VIII), breach of implied covenant of good faith and fair dealing (Count IX), negligent supervision (Count X), common law retaliation (Count XI), and attorney's fees (Count XII) on the grounds that the New Mexico Tort Claims Act ("NMTCA") does not waive immunity for these claims.  For the reasons stated below, the motion will be granted in part and denied in part.

### A.    <u>Waiver of Immunity for Tort Claims Under the NMTCA</u>

Defendant NMDOH argues that Harkness' tort claims in counts V, VII, VIII, X, XI, and XII should be dismissed because the legislature has not waived the state's sovereign immunity for those

claims.   In response, Harkness relies on § 41-4-9 of the NMTCA, which provides that the state's immunity has been waived for "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities."   According to Harkness, the New Mexico Retirement Center in Roswell, New Mexico is a "like facility" under this statute, and she alleges that the individual defendants caused her damages while acting within the scope of their duties to operate that facility. Thus, she argues that their immunity has been waived.

Harkness' argument is novel, and to this Court's knowledge it has not been addressed in New Mexico cases.   In essence, she contends that a public employee may assert employment-related tort claims against the public hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facility that employs him or her because such torts arise from the "operation" of such facilities.   The Court disagrees for several reasons.   First, there is no authority that indicates that the New Mexico legislature intended such a broad waiver of sovereign immunity.   If the Court were to accept Harkness' reasoning, then sovereign immunity would be waived for all employment-related tort claims brought by employees of public health facilities.   What is more, because of the repetitive use of the same language throughout the NMTCA, sovereign immunity would also be waived for similar employment claims brought by employees involved in the operation of public airports (§ 41-4-7), public utilities, waste disposal facilities, and ground transportation (§ 41-4-8), public health care providers (§ 41-4-10), and public employees working on construction projects (§ 41-4-11). Harkness presents no authorities that suggest that the legislature intended this result.

Second, courts that have interpreted § 41-4-6(A) have construed the word "operation" and the liability that flows from it much more narrowly.   That section provides that sovereign immunity

10

has been waived for "bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  NMSA 1978, § 41-4-6(A).  In *Espinoza v. Town of Taos*, 120 N.M. 680, 905 P.2d 718 (1995), a child was injured on a playground at a city sponsored day camp.  The  parents alleged insufficient and negligent supervision of all the children attending the camp, not just their child.  The court declined to find a waiver of sovereign immunity because "the negligent conduct itself did not create the unsafe conditions.  The playground was a safe area for children."  *Id*. at 684.  Rather, for the waiver to apply, the negligent "operation or maintenance" must create a dangerous condition that threatens the general public or a class of users of the building – "the critical question is whether the condition creates a potential risk to the general public."  *Id*. at 683.  Here, the negligent operation or maintenance of the Retirement Center did not create a dangerous condition that threatened the public.  Harkness relies upon *Upton v. Clovis Mun. Sch. Dist.*, 140 N.M. 205, 2006-NMSC-040 (2006), in which a child died of an asthma attack at school after substitute physical education teacher required her to participate in a strenuous class, even though the school had been notified of her special needs.  The New Mexico Supreme Court observed, "[t]he waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building."  *Id*. at 207, ¶ 9.  In finding that immunity had been waived, the court concluded that the plaintiffs had asserted much more than negligent supervision of their daughter.  Rather, they challenged the school district's general failure to implement promised safety policies for at-risk students.  *Id*. at 209, ¶ 18.  Further, the court concluded that the school failed to respond appropriately to the specific information it was given about the child's condition and to implement the specific assurances given to the plaintiffs about the care the school would provide in light of

11

their child's special needs. *Id*. This reasoning in *Upton* does not support a waiver of immunity in this employment case. As in *Espinoza*, the court in *Upton* was persuaded that liability was waived for negligence in the operation of the school building that created a broad hazard for the *users* of the building—the students. That is in stark contrast to Harkness' claim, which is not that the state's negligence caused a hazard to the users of the retirees who used the Retirement Center, but rather for the employees who help to operate it.

Third, the waiver of immunity contained in § 41-4-9 is for negligence. In contrast, almost all of Harkness's tort claims are for *intentional* torts: violation of public policy (Count V), intentional infliction of emotional distress (Count VII), disparate treatment (Count VIII), and common law retaliation (Count XI). Thus, the waiver contained in § 41-4-9 does not apply to those claims.

Fourth, § 41-4-9 does not apply because it waives immunity only for claims of bodily injury, wrongful death or property damage. Harkness asserts none of these damages. Instead, she claims to have suffered lost wages and benefits, emotional distress, and injury to her reputation.

Finally, the NMTCA makes no provision for recovery of attorney's fees (Count XII) against the state and its employees. In the absence of controlling authority to the contrary, each party in litigation must bear its own fees. *Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990) ("New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees."). Thus, Count XII is dismissed as to the tort claims, though the Court expresses no opinion as to the availability of attorney's fees against Defendants under Harkness' Title VII claims in Counts I and II.

### B.        Breach of Implied Covenant of Good Faith and Fair Dealing

Harkness asserts a claim for breach of the implied covenant of good faith and fair dealing

(Count IX), a claim which sounds in contract. "New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." *Sanders v. FedEx Ground Package Sys., Inc.*, 144 N.M. 449, 452, 188 P.3d 1200, 1203, 2008-NMSC-040 (2008) (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co., Inc. v. Males*, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) (citations omitted). "The implied covenant is aimed at making effective the agreement's promises[;][t]hus, it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Sanders*, 144 N.M. at 452 188 P.3d at 1203.

NMSA 1978, Section 37-1-23(A) provides, "Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." Thus, under this section, one may sue a governmental entity only for breach of a valid written contract. Defendant NMDOH moves to dismiss Harkness' claim for breach of the duty of good faith and fair dealing because in Paragraph 157 of her complaint, she alleges that she entered into an *oral* employment contract with the Defendants. While conceding this point, Harkness argues that her claim should not be dismissed because she has also alleged that NMDOH had certain policies in place prohibiting sexual harassment, discrimination, and retaliation (see ¶¶ 42-45 of Complaint), and that these written policies constitute an implied written contract.

"Whether an implied employment contract exists is a question of fact, and it may be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." *Garcia v. Middle Rio Grande Conserv. Dist.*, 121 N.M. 728, 731, 918 P.2d 7, 10, 1996-NMSC-029 (1996) (internal citation omitted). The New Mexico Supreme Court has held that an employee handbook may constitute an

implied employment contract.  *Forrester v. Parker*, 93 N.M. 781, 782, 606 P.2d 191, 192 (1980).

In *Garcia*, the New Mexico Supreme Court held that in the proper circumstances a personnel manual

could be enforced against a public entity as a contractual obligation even though there was no

writing specifically incorporating it into the employment relationship.  The Supreme Court held that

no policy embodied in Section 37-1-23(A) was violated by enforcing personnel manuals adopted

by public employers.

Although it is a close question, the Court will deny the motion to dismiss for failure to state

a claim.  While Harkness has alleged an oral contract, which is not enforceable, she has also alleged

the existence of a written policy that may constitute a written contract.  This is a matter better suited

for evaluation at the summary judgment stage, and therefore the motion to dismiss Count IX will

be denied.[1]

## III.  MOTION TO DISMISS INDIVIDUAL DEFENDANTS AND CLAIMS FOR PUNITIVE DAMAGES AND PREJUDGMENT INTEREST

### A.  Claims Against the Individual Defendants

The individually named defendants move the Court to dismiss Harkness' claims against them

in their personal and official capacities.  For the reasons that follow, the Court will grant the motion

in part and deny it in part.

### 1.  Title VII (Counts I and II) and NMHRA (Counts III, IV, and VI)

The individual defendants move to dismiss Harkness' claims against them for failure to

exhaust administrative remedies.  Specifically, they point out that Harkness named the NMDOH as

---

[1] The same is true for NMDOH's argument that Harkness was a probationary employee, and therefore the department's written policies could not create a written contract with her.  The issue of whether or not Harkness was a probationary employee is not answered by the allegations in the complaint and would require proof by evidence outside the pleadings.  Accordingly, this too is a matter more appropriate for evaluation on summary judgment.

the defendant in her EEOC charge, thus exhausting her administrative remedies as to that entity for purposes of suing under Title VII.  However, they point out that Harkness failed to name the individual defendants in her administrative charge, thereby failing to exhaust her administrative remedies against them under both Title VII and the NMHRA.  Furthermore, the Tenth Circuit has held that "personal capacity suits against individual supervisors are inappropriate under Title VII." *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996) (relying on *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993)).  As discussed above, it is undisputed that Harkness has failed to exhaust her administrative remedies against any of the Defendants with regard to the NMHRA, but for the time being only her claims against the individual defendants will be dismissed.

Harkness does not dispute these authorities and acknowledges that she has no Title VII claims against the individual defendants in their personal capacities, but she contends that under *Sauers* she does have claims against them in their official capacities.  With regard to her claim against NMDOH under the NMHRA, Harkness again asks for additional time to obtain a determination from the New Mexico Human Rights Division so that she may exhaust her administrative remedies on those claims.  The Court has granted this request.

Based upon the foregoing, the Court will grant the motion in part and will dismiss the Title VII claims against the individual defendants in their personal capacities.  Harkness' Title VII claims against the individual defendants in their official capacities survive, because in their official capacities they are indistinguishable from the employer, NMDOH, against whom Harkness has exhausted her administrative remedies.  Finally, the Court will grant the motion to dismiss the NMHRA claims against the individual defendants in both their personal and official capacities.  As discussed above, Harkness has failed to exhaust her administrative remedies against them under the NMHRA.  Further, it would be futile for her to attempt to add the individual defendants to her

15

administrative date at this late date.

### 2.      Tort Claims (Counts V, VII, VIII, X, and XI)

The individual defendants move to dismiss Harkness' tort claims on the grounds that the NMTCA does not waive their sovereign immunity for those claims.  For the reasons previously discussed above, the Court agrees with respect to the claims against the individual defendants in their official capacities.  To that extent, Harkness' tort claims will be dismissed.

However, Harkness also sues the individual defendants in their personal capacities. For such claims, to the extent they exist, sovereign immunity would not be available to the individual defendants.  It is far from clear, however, that Harkness' complaint has adequately alleged these tort claims against the individual defendants in their personal capacities under Rule 12(b)(6), particularly in light of the fact that she specifically alleges that at all material times the individual defendants were acting as agents of NMDOH and within the course and scope of their employment.  *See* Complaint, Doc. No. 1 at ¶  11.  In contrast, the NMTCA only provides immunity to public employees "acting within the scope of duty," defined as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity. . . ."  *See* NMSA 1978, § 41-4-4(A) and § 41-4-3(G).  However, the individual defendants do not move to dismiss on this ground, they do not raise the argument, and the parties have not briefed the issue.  As a result, the Court will not dismiss the tort claims against the individual defendants in their personal capacities at this time.

### 3.      Breach of the Duty of Good Faith and Fair Dealing (Count IX)

As stated above, this claim sounds in contract, and in order to prevail on this claim Harkness must identify a written contract with the NMDOH.  To the extent that Harkness has alleged that she

had a contract of employment, that contract was with the NMDOH.  She has alleged no facts to

support the existence of any contract with the individual defendants in any capacity.  Accordingly,

the Court will dismiss this claim against the individuals in both their official and personal capacities.

    **B.**    **Punitive Damages**

       Harkness purports to assert a cause of action for punitive damages.  However, there is no

such cause of action.  Rather, punitive damages is a remedy that is sometimes available to a

prevailing party.  Defendants argue, and Harkness concedes, that Title VII does not permit the

recovery of punitive damages against a public entity.  Accordingly, she cannot recover punitive

damages under Counts I and II.  Similarly, Harkness does not dispute Defendants' argument that

punitive damages are not available against a government entity under the NMHRA.  *See Gandy v.*

*Wal-Mart Stores, Inc.*, 117 N.M. 441, 443, 872 P.2d 859, 861 (1994).  As discussed above, the Court

has already concluded that Harkness' claims against the individual defendants under the NMHRA

should be dismissed, thereby making the argument about punitive damages moot.  However, to the

extent that it may still be relevant, Harkness may not recover punitive damages against NMDOH

under Counts II, IV, and VI.  Similarly, Harkness' Count IX contract claim—breach of the duty of

good faith and fair dealing—has been dismissed as to the individual defendants, though it survives

as against NMDOH.  Regardless, Harkness does not dispute that punitive damages are not available

for claims against a state agency that sound in contract. *Barreras v. State of New Mexico Corrections*

*Dept.*, 133 N.M. 313, 317, 2003-NMCA-027, ¶ 15 (Ct. App. 2002).

       This leaves Harkness' tort claims in Counts V, VII, VIII, X, and XI.  As previously

discussed, her tort claims against NMDOH as well as the tort claims against the individual

defendants in their official capacities have been dismissed due to qualified immunity.  To the extent

that Harkness may have remaining tort claims against the individual defendants in their personal

capacities—a matter not currently before the Court—punitive damages would be an available remedy.

C.    __Prejudgment Interest__

As with punitive damages, there is no cause of action for prejudgment interest; rather, this is another form or remedy for a prevailing party.  However, the Court concurs with the Defendants that, under § 41-4-19(D), prejudgment interest may not be awarded against the NMDOH and the individual defendants in their official capacities for tort claims.  However, this point is moot as those claims have been dismissed.  Defendants do not address, and therefore neither does the Court, whether or not prejudgment interest is available to Harkness on those claims that remain.

__CONCLUSION__

Harkness' Title VII claims (Counts I and II) against NMDOH and the individual defendants in their official capacities still survive, along with her claim against NMDOH only for violation of the NMHRA (Counts III, IV, and VI) and breach of the duty of good faith and fair dealing (Count IX).  However, the viability of her NMHRA claim against NMDOH depends upon her ability to exhaust her administrative remedies as discussed herein.  Also surviving are Harkness' tort claims (Counts V, VII, VIII, X, and XI) against the individual defendants in their personal capacities. Plaintiff's claim for attorney's fees (Count XII) is viable only with respect to her Title VII claims, while she may recover punitive damages only with regard to her tort claims against the individual defendants in their personal capacities.  All other claims in Harkness' complaint will be dismissed.

**IT IS THEREFORE ORDERED** that:

(1)    *Defendants' Motion to Dismiss Counts 3, 4 and 6 of Plaintiff's Complaint (Plaintiff's Human Rights Act Claims) Pursuant to Rule 12(b)(6)* [Doc. No. 22] is **GRANTED IN PART AND DENIED IN PART**;

(2)     *Defendant's Motion to Dismiss Plaintiffs' Common Law Claims (Counts 5 and 7-12 of Plaintiff's Complaint) Pursuant to Rule 12(b)(6)* [Doc. No. 24] is **GRANTED IN PART AND DENIED IN PART**;

(3)     *Defendants' Motion to Dismiss the Individually Named Defendants and Plaintiff's Claims for Punitive Damages and Pre-Judgment Interest Pursuant to Rule 12(b)(6)* [Doc. No. 26] is **GRANTED IN PART AND DENIED IN PART**;

(4)     Plaintiff's Title VII claims against the individual defendants in their personal capacities are **DISMISSED WITH PREJUDICE**;

(5)     Plaintiff's New Mexico Human Rights Act claims against the individual defendants in their personal and official capacities are **DISMISSED WITH PREJUDICE**;

(6)     Plaintiff's claim against the individual defendants in their personal and official capacities for breach of the implied covenant of good faith and fair dealing is **DISMISSED WITH PREJUDICE**;

(7)     Plaintiff's tort claims (violation of public policy, intentional infliction of emotional distress, disparate treatment, negligent supervision, and common law retaliation) against the New Mexico Department of Health and the individual defendants in their official capacities are **DISMISSED WITH PREJUDICE**; and

(8)     Plaintiff must comply with the requirements set forth in Part I of the Discussion, *supra*, or her NMHRA claim against NMDOH will be dismissed.


_____
**UNITED STATES DISTRICT JUDGE**